No. 86-326

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

LARRY THORNOCK,
                    Plaintiff and Appellant,

        -vs-

PACK RIVER MANAGEMENT CO., PACK RIVER
INVESTMENT CO., and MISSION INSURANCE
COMPANY,
                    Defendants and Respondents.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and for the County of Lake,
                The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Michael J. McKeon, Anaconda, Montana

        For Respondent:

            Larry W. Jones; Garlington, Lohn & Robinson, Missoula,
            Montana

                            Submitted on Briefs:   Jan. 8, 1987

                                Decided:  July 30, 1987

Filed: JUL 3 0 1987

                    _Ethel M. Harrison_
                            Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

In this personal injury action, Mr. Thornock appeals from the Lake County District Court's summary judgment in favor of defendant Pack River Management Company. We affirm.

The issues are:

1. Was summary judgment improper because factual issues remain in dispute?

2. Did the District Court err in granting summary judgment before discovery was completed?

Mr. Thornock's arm was traumatically amputated while he was operating a piece of equipment at work. His employer was Flathead Lumber Company (Flathead Lumber). Mr. Thornock has received a full settlement from Flathead Lumber through workers' compensation.

Mr. Thornock brought this action to recover damages from entities other than his employer. This appeal involves only the claim against Pack River Management Company (Pack River). Mr. Thornock abandons any further claim against defendant Pack River Investment Company in his brief on appeal. The claim against defendant Mission Insurance Company has been stayed because Mission is in conservatorship.

Pack River is a Washington partnership whose members own 85% of the stock in Flathead Lumber, a Montana corporation. Mr. Thornock sued Pack River on a theory that it owed him a duty to provide a safe place to work, based on its relationship with his immediate employer, Flathead Lumber. He relied upon this Court's opinion in Reynolds v. Burlington Northern, Inc. (Mont. 1980), 621 P.2d 1028, 37 St.Rep. 1883, as authority for the duty. The District Court concluded that because of factual differences, a casting aside of the corporate cloak was not justified in this case as it was in Reynolds. It ruled that Mr. Thornock had presented no factual situation

2

which would allow him to pursue a separate claim against Pack River. Mr. Thornock appeals from the resulting summary judgment for Pack River.

## I

Was summary judgment improper because factual issues remain in dispute?

Mr. Thornock argues that summary judgment was improperly granted. He says material issues of fact remain, under his theory that Pack River is liable as a parent company to its subsidiary Flathead Lumber. He also maintains that Pack River is liable under either an alter-ego or a principal/agency theory.

In a deposition, the manager of Flathead Lumber characterized the relationship between Pack River and Flathead Lumber as a parent-subsidiary relationship. Mr. Thornock argues that under this Court's opinion in Reynolds, that admission prohibits summary judgment because it requires Pack River to provide a safe place for him to work.

In Reynolds, plaintiff was a lumber company employee who was badly injured while loading woodchips into defendant Burlington Northern's railroad cars. Plaintiff's place of employment was a railroad siding leased from the defendant railroad by plaintiff's employer, the wholly-owned subsidiary of a wholly-owned subsidiary of the railroad. Several railroad cars had been placed on the siding by railroad employees, and the brakes had not been set. A string of empty cars began to roll and struck a cable on which the plaintiff was working, throwing him into the air and breaking his leg. This Court stated that "[t]he plaintiff was performing work more directly connected to the operations of a railroad than to the operations of a lumber company," and that "[t]he plaintiff was working directly in the operations of the

railroad in every sense of the word." Reynolds, 621 P.2d at 1037 and 1038. The Court held that the defendant railroad company owed plaintiff the duty to provide him with a safe place to work. Reynolds, 621 P.2d at 1038.

In the present case, Mr. Thornock was injured while working in the Flathead Lumber mill using equipment owned by Flathead Lumber. There is no suggestion that Pack River was or is engaged directly in the lumber business, or in a directly related business. In addition, nothing has been presented to show that Pack River was an operating entity engaged in operating its business at the place of injury. This is in direct contrast to the operation of the railroad by Burlington Northern in Reynolds. We conclude that these factual differences are controlling and that as a result Mr. Thornock has failed to prove that Pack River owed him the duty to provide a safe place to work under Reynolds.

Under his alter ego and principal/agency theories, Mr. Thornock argues that Flathead Lumber was so controlled by Pack River that it "amounts to nothing more than a facade that should be disregarded." He contends that the corporate cloak should therefore be cast aside, allowing the Flathead Lumber shareholders to be sued. The rule, as cited by Mr. Thornock, is that the corporate cloak will not be cast aside under either an agency or an alter ego theory unless it appears "not only that the corporation is controlled and influenced by one or a few persons, but, in addition . . . that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud." 18 C.J.S., Corporations, sec. 6, p. 378, cited in State v. Holmes (1942), 113 Mont. 303, 308, 124 P.2d 994, 996.

Mr. Thornock refers to deposition testimony in which the manager of Flathead Lumber stated that Flathead Lumber was a

4

subsidiary of Pack River and that major corporate decisions were discussed with the managers of the Pack River partnership. The manager also testified, however, that he himself made the day-to-day decisions and conducted the day-to-day operation of Flathead Lumber. Further, Mr. Thornock has not shown by affidavit or deposition any indication that Flathead Lumber was utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud. We conclude that summary judgment is not precluded under the alter ego or principal/agency theory.

We further point out that Mr. Thornock has failed to show a legal theory under which recovery would be allowed had he been able to prove that Pack River in fact was the principal for which Flathead Lumber was the agent, or that Pack River was the alter ego of Flathead Lumber. Had he been successful in proof of either the principal/agency or alter ego theory, the result would be that Pack River would be classed as the same entity as Flathead Lumber. Flathead Lumber has discharged its responsibility for Mr. Thornock by securing workers' compensation insurance, with the result that neither Flathead Lumber nor Pack River would be separately subject to liability for the injury which was covered by the Workers' Compensation Act.

II

Did the District Court err in granting summary judgment before discovery was completed?

Mr. Thornock maintains that summary judgment was improperly granted before he received answers to two sets of interrogatories, two requests for production, and a request for an admission. He cites Rule 56(c), M.R.Civ.P.:

5

> . . . The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

When Pack River moved for summary judgment, it also moved for and was granted an extension of time to answer the discovery requests at issue here. The District Court was clearly aware of the pending discovery requests. It had before it the undisputed affidavit of a Pack River partner that Pack River was a Washington partnership and that it owned 85% of the stock of Flathead Lumber, a Montana corporation. Copies of the Flathead Lumber corporate records from the office of the Secretary of State were before the court. It was undisputed that the piece of equipment on which Mr. Thornock was injured belonged to Flathead Lumber and that the area of injury was under the operational control of Flathead Lumber. A copy of Mr. Thornock's petition for full and final workers' compensation settlement with Flathead Lumber was a part of the District Court file. The discovery requests which remained unanswered related essentially to the business arrangements between Pack River and Flathead Lumber. There was nothing in these discovery requests which was aimed at determining whether or not Pack River in some way itself was an operating company in the specific area where the injury took place. The interrogatories were aimed at determining the nature of the control Pack River exercised over Flathead Lumber. We conclude that none of the requests are aimed at bringing forth information regarding the operations of Pack River in such a manner as to establish that Pack River owed Mr. Thornock a duty of providing a safe workplace. Under the facts of this case we hold that the District Court did not

err in granting summary judgment before discovery was completed.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent from the majority opinion and would hold that summary judgment was inappropriate. The plaintiff is entitled to show, after discovery, that material issues of fact remain.

The lower court granted summary judgment to defendant finding that Pack River owned 85% of the Thornock's employers stock; Flathead Lumber Company, not Pack River, owned the equipment which injured Thornock; and that Thornock failed to counter defendant's claim that defendant was not engaged in duties closely connected to Flathead Lumber Company.

I do not believe these stated findings are dispositive of the issues. An entity is not necessarily immune from tort liability to an employee of another entity that it controls for its own independent acts of negligence. It may be held liable under common law principles for any harm resulting from its own reckless conduct or negligence. Reynolds v. Burlington Northern, Inc. (Mont. 1980), 621 P.2d 1028, 37 St.Rep. 1883; 30 A.L.R.4th 948.

This rule is not limited to the facts in Reynolds. A rainbow of factual scenarios may create such a duty. See 2A Larson, Workmen's Compensation Law, § 72.40; 30 A.L.R.4th 948 Workers' Compensation Immunity As Extending to One Owning Controlling Interest In Employer Corporation.

Further, the fact that Thornock had received Workers' Compensation benefits is not dispositive of the duties owed to him by Pack River. Thornock is entitled to thoroughly discover facts to support his theories.

Discovery had not yet been completed by the parties. Two sets of plaintiff's interrogatories to defendant which requested information about the interrelationship of Flathead

Lumber Company and defendant Pack River, are unanswered. Two sets of requests for production of documents and a request for admission remained unanswered.

In its final order the trial court noted that Thornock did not counter Pack River's claim that the defendants were not engaged in duties "closely-connected" to Flathead Lumber Company. The discovery method was the only method available to Thornock to show a "close connection" or to show other factors indicative of a duty owed to him since respondent was in possession of that information. He may have been able to establish the existence of a duty owed to him by Pack River had he been allowed to complete discovery.

I would hold that appellant is entitled to present his full case to the court after discovery is complete and would therefore reverse and remand this case with instructions to allow the parties to proceed with discovery.

_____
Justice

I concur with the dissent of Mr. Justice William E. Hunt, Sr.

_____
Justice